**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**CIVIL ACTION NO. 19-cv-11235**

**(LEAVE TO FILE EXHIBIT 6 UNDER SEAL GRANTED ON MARCH 19, 2021)**

---

**SHAWN T. MCCLINTON**
                                    **Plaintiff.**
**v.**

**LEIGHTON FACEY**
                            **Defendant.**

---

**DEFENDANT LEIGHTON FACEY'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT**

Defendant, Leighton Facey ("Facey"), submits the following in support of his motion for summary judgment:

**I.     INTRODUCTION**

The crux of Plaintiff, Shawn T. McClinton's ("Plaintiff"), Amended Complaint is that Facey, by virtue of being duty supervisor on the night of Plaintiff's arrest, was deliberately indifferent to his medical needs.  Plaintiff contends, mistakenly, that it is a constitutional violation every time an arrestee complains of pain and is not immediately provided with a medical evaluation.  But the law in the First Circuit is clear that in order to prove a failure to provide medical treatment claim in violation of the Constitution, a plaintiff must establish that he had an objectively serious medical need and that the defendant, subjectively, was deliberately indifferent to that need.  Here, Plaintiff can prove neither.  Not only is there no evidence that Plaintiff's medical needs were objectively serious, there is no evidence that Facey was deliberately indifferent to them.  The remainder of Plaintiff's claims, which are grounded in

negligence, fail because Facey is immune from liability under the Massachusetts Tort Claims Act ("MTCA").

## II.      PROCEDURAL BACKGROUND

Plaintiff's first complaint alleged constitutional violations against both Facey and the City of Boston ("City").  Facey answered the complaint and the City moved to dismiss.  ECF Nos. 24-26.  The Court allowed the City's motion to dismiss.  ECF No. 34. On December 22, 2020, the Court permitted Plaintiff to amend his complaint and Plaintiff did so on January 5, 2021.  ECF No. 77.  Plaintiff's Amended Complaint brought nine counts against Facey: negligence (Count 1), gross negligence (Count 2), intentional infliction of emotional distress (Count 3), negligent infliction of emotional distress (Count 4), violation of the 14th Amendment (Count 5), violation of the 8th Amendment (Count 6), intent to cause emotional distress (Count 7), extreme and outrageous misconduct (Count 8), and violation of the Massachusetts Declaration of Rights (Count 9).

## III.      UNDISPUTED FACTS

Plaintiff was arrested by two Boston police officers on October 5, 2017.  See Deposition Transcript (Excerpts) of Plaintiff, attached hereto as Exhibit 1, at 7:15-24; 8:1-3; 11:11-16. Facey was not involved with Plaintiff's arrest.  Exhibit 1, at 11:21-24; 12:1-2.  Indeed, according to Plaintiff, what transpired during his arrest is not relevant to the claims set forth in his Amended Complaint.  Exhibit 1, at 12:3-24; 13:13-19. [1]

Plaintiff was brought to the Boston Police Department Area B2 station for booking. Exhibit 1, at 29:9-15.  Upon arriving at the police station Plaintiff had a visible abrasion on his

---

[1] At his deposition, Plaintiff refused to testify about the circumstances which lead to his arrest as some of the criminal charges that stem from his arrest are still pending.  Exhibit 1, at 11:21-24; 12:1-24; 13:1-24; 14:1-24; 15:1-8.

cheek and left arm.  See Exhibit 1, at 30:4-23; 31:1-14; see also Plaintiff's Booking Form, attached hereto as Exhibit 2, at p. 2.  Plaintiff was not bleeding, there were no bones protruding from his body, and there were no other discernible injuries.[2]  Exhibit 1, at 31:5-24; 32:1-24.

Plaintiff was booked by Officer Michael Kerin.  Exhibit 1, at 33:1-5; see also Exhibit 2, at p. 1.  Plaintiff complained to Officer Kerin about the pain that he was experiencing.  Exhibit 1, at 33:6-9.  In fact, according to Plaintiff, he told "[e]very officer [he] came into contact with" about his pain.  Exhibit 1, at 33:6-11; 38:5-8.  That said, Plaintiff does not know whether he came into contact with Facey at the police station.  Exhibit 1; 38:24; 39:1-5.  In any event, a Visible Injury Report was completed that documented Plaintiff's visible injuries and his complaints of pain.  See Visible Injury Report, attached hereto as Exhibit 3.

Facey, as duty supervisor, was not involved with Plaintiff's booking process.  See Affidavit of Facey, attached hereto as Exhibit 4, at ¶¶ 4-5.  In fact, Facey's shift did not begin until 3:00 p.m., approximately thirty minutes after Plaintiff was booked.  Exhibit 2; Exhibit 4, at ¶ 4.  Facey testified that he did not personally interact with Plaintiff in any way while he was at the police station.  Exhibit 4, at ¶ 6.

Facey was informed by one of the patrol officers that Plaintiff was complaining of pain.  Exhibit 4, at ¶ 7.  Facey was informed that there were no visible injuries other than minor abrasions to Plaintiff's cheek and arm.  Exhibit 4, at ¶ 7.  Plaintiff concedes that there were no visible injuries other than these abrasions.  Exhibit 1, at 31:5-24; 32:1-24.  Nonetheless, Facey instructed that EMS be requested, and he was informed by the patrol officer that EMS had

---

[2] At his deposition, Plaintiff testified that his "movements" and "emotional state" at the police station should have alerted the police officers about his need for medical attention.  When asked to elaborate as to what his "movements" were, Plaintiff stated that he made a makeshift sling out of his t-shirt while in the holding cell.  Exhibit 1, at 45:1-18.  As for his "emotional state", Plaintiff stated that he was "emotionally battered," "defeated", and "I was hurt."  Exhibit 1, at 37:28-23.

already been requested.  Exhibit 4, at ¶ 7.  According to Facey, regardless of whether he thinks an arrestee's injuries are serious or not, it is his practice to request EMS whenever an arrestee complains of pain.  Exhibit 4, at ¶ 9.  Facey testified that, as far he knew, Plaintiff refused to be evaluated by EMS upon their arrival.[3]  Exhibit 4, at ¶ 8.

Plaintiff sought treatment for his pain the following day at Massachusetts General Hospital ("MGH").  Exhibit 1, at 46:1-12.  Plaintiff received x-rays and was diagnosed with a "minimally displaced radial styloid fracture".  See Plaintiff's medical records from MGH, attached hereto as Exhibit 6, at p. 1.  His wrist was placed in a splint and he was given a shoulder sling for comfort.  Exhibit 1, at 49:4-7.  Plaintiff's medical records do not indicate that any delay in treatment exacerbated his injury.[4]  Exhibit 6.  Plaintiff's medical records do not indicate that there was any visible injury to his right wrist.  Exhibit 6.  Plaintiff's medical records do not mention the superficial abrasions to his cheek and left arm.  Exhibit 6.

Other than going to MGH on October 6, 2017, Plaintiff did not seek further treatment for his wrist.  Exhibit 1, at 49:8-22.  Plaintiff's treating physician on October 7, 2017, did not recommend any further treatment.  Exhibit 6.

## IV.   LEGAL STANDARD

"The role of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for a trial."  PC Interiors, Ltd. V. J. Tucci Constr. Co., 794

---

[3] Facey testified that EMS responded to the police station and that, as far as he knew, Plaintiff refused to be evaluated.  BPD records reflect that EMS was dispatched and responded to the police station at 2:53 p.m., during the course of Plaintiff's booking process.  See EMS Incident History for October 5, 2017, attached hereto as Exhibit 5; see also Exhibit 2 (reflecting Plaintiff's booking time).  Nonetheless, Facey understands that Plaintiff disputes that he refused to be evaluated by EMS and that this fact is considered disputed for purposes of summary judgment.

[4] Of note, Plaintiff's medical records reflect that Plaintiff refused to let the physician assistant perform any shoulder-specific tests, consistent with Facey's testimony that Plaintiff refused to be evaluated by EMS at the police station.  See Exhibit 6, at p. 1 "Pertinent Exam Findings".

F. Supp. 2d 274, 275 (D. Mass. 2011).  The burden is upon the moving party to show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Once the moving party has satisfied this burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, trial issue."  PC Interiors, 794 F. Supp. 2d at 275.  The non-moving party may not rest upon mere allegation or denials but, rather, must set forth specific facts showing that there is a genuine issue for trial.  See LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841-42 (1st Cir. 1993).

## V.    ARGUMENT

### A.  Counts 1, 2, And 4 Must Be Dismissed Because Facey Is Immune From Liability For Negligence Claims

Counts 1, 2, and 4 of Plaintiff's Amended Complaint are negligence claims against Facey.[5]  But Facey is immune from liability for any negligence claim pursuant to the MTCA.  See G. L. c. 258, § 2 ("Public employers shall be liable for injury…caused by the negligent or wrongful act or omission of any public employee while acting with the scope of his office or employment"); see also Canales v. Gatzunis, 979 F. Supp. 2d 164, 175 (D. Mass. Oct. 28, 2013) (dismissing negligence claims against public employees).  Because Facey is immune from liability under the MTCA, Counts 1, 2, and 4 of Plaintiff's Amended Complaint must be dismissed.

### B.  Plaintiff's Failure To Provide Medical Assistance Claims (Counts 5 And 6) Must Be Dismissed Because The Eighth Amendment Does Not Apply To Pretrial Detainees And Because Facey Was Not Deliberately Indifferent To Any Serious Medical Need.

Plaintiff brings two claims for failure to provide medical assistance:  one under the Eighth Amendment one under the Fourteenth Amendment.  Because Plaintiff was a pretrial

---

[5] Count 1 is for negligence, Count 2 is for gross negligence, and Count 4 is for negligent infliction of emotional distress.

detainee and not a convicted inmate at the time of his Amended Complaint, the Eighth Amendment does not apply and the Fourteenth Amendment governs his failure to provide medical treatment claim.  See Surprenant v. Rivas, 424 F.3d 5, 13 (1st Cir. 2005).  Count 6 of Plaintiff's Amended Complaint, which asserts a claim under the Eighth Amendment, should be dismissed for this reason alone.  See id.

As for Plaintiff's Fourteenth Amendment claim, a police officer violates the Fourteenth Amendment's prohibition against cruel and unusual punishments when he exhibits "deliberate indifference" to a prisoner's "serious medical needs."[6]  Perry v. Roy, 782 F.3d 73, 78 (1st Cir. 2015).  To succeed on a claim of deliberate indifference based on delayed medical care, a plaintiff must satisfy both an objective and subjective inquiry.  Id. (internal citations omitted). The objective prong requires proof of a "serious medical need" and the subjective prong requires a showing of the officer's "deliberate indifference" to that "serious medical need."  Id.; see also Estelle v. Gamble, 429 U.S. 97, 105-06 (1976).

As to the objective prong, a medical need is "serious" if a lay person would easily recognize the need for urgent medical care.  See Gaudreault v. Salem, 923 F.2d 203, 208 (1st Cir. 1990) (emphasis added).  Bruises, cuts, swelling, and superficial lacerations do not rise to the level of a "serious medical need".  See id. at 208-209 (1st Cir. 1990) ("While [plaintiff's] injuries may have been 'obvious' in the sense that his bruises and abrasions were visible, the medical record demonstrates that he did not display any needs so patent as to make lay persons such as [the officers] remiss in failing to arrange for immediate medical attention"); see also

---

[6] The Fourteenth Amendment provides at least as much protection for pretrial detainees as the Eighth Amendment provides for convicted inmates.  See Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983).  Generally, the standard applied under the Fourteenth Amendment is the same as the Eighth Amendment standard.  See Burrell v. Hampshire County, 307 F.3d 1, 7 (1st Cir. 2002).

Abernathy v. Anderson, 984 F.3d 1, 7 (1st Cir. 2020).  Likewise, a prisoner's subjective declarations of pain, without more, do not rise to the level of a "serious" medical need.  See Abernathy v. Anderson, 395 F. Supp. 3d 123, 134-35 (D. Mass. Jul. 31, 2019) (granting summary judgment for nurse who allegedly ignored a prisoner's complaints of pain because plaintiff could not demonstrate she was "deliberately indifferent" to a "serious medical need").  A medical need may, however, be considered "serious" in the constitutional sense if the evidence suggests that the delay in treatment intensified the injury.  See Gaudreault, 923 F.2d at 208-209.

        As to the subjective prong, a plaintiff must show that the officer possessed a "sufficiently culpable state of mind, namely one of 'deliberate indifference' to a prisoner's health or safety."  See Leavitt v. Corr. Med. Servs., 645 F.3d 484, 497 (1st Cir. 2011) (internal citations omitted).  "A showing of deliberate indifference, in this context, requires more than mere inadvertence or negligence.  Rather, a plaintiff must establish that the officer was aware of a substantial risk of serious harm which he intentionally disregarded."  See Gaudreault, 923 F.2d at 208-209.  Put another way, the plaintiff must prove that the officer had a "'culpable state of mind and intended wantonly to inflict pain.'"  Id. (citing LaFrenier v. Kinirey, 478 F. Supp. 2d 126, 140 (D. Mass. 2007)).

        Here, there is no evidence that Plaintiff was suffering from an objectively "serious medical need".  Plaintiff had minor abrasions on his cheek and left arm.  As noted above, these minor abrasions, for which Plaintiff did not seek treatment and which were not even addressed by Plaintiff's treating physician, do not amount to a "serious medical need."  See Gaudreault, 923 F.2d at 208-209.  Likewise, Plaintiff's subjective declarations of pain in his shoulder and wrist do not rise to the level of a "serious medical need".  See Abernathy, 395 F. Supp. 3d at 134-35.  There was no bleeding from Plaintiff's shoulder or wrist.  There were no bones

protruding from Plaintiff's shoulder or wrist.  In short, there was nothing to alert a lay officer of a "serious medical need" with Plaintiff's shoulder or wrist.  Moreover, no treatment was provided to Plaintiff for his shoulder or wrist at MGH other than a sling and splint for comfort. See Exhibit 4.  Plaintiff did not seek any further treatment.  Objectively, then, there was no reason for Plaintiff to be provided with medical treatment.[7]

Moreover, there is no evidence that Plaintiff's injuries were exacerbated by the delay in treatment.  See Geaudreault, 923 F.2d at 208-209.  A plaintiff's subjective beliefs that his injuries were exacerbated by the delay in treatment, without medical evidence, are not enough to survive summary judgment.  Id.  This is because it is "the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant for Eighth Amendment purpose."[8]  Leavitt, 645 F.3d at 500.  In Gaudreault, for example, the plaintiff suffered a "blow out fracture" of his right eye orbit that resulted in a deviated septum, a cyst in his sinus, and some transient nerve damage.  See Geaudreault, 923 F.2d at 208-209.  However, because the examining physician saw no need for immediate physical intervention, and noted that surgery might be recommended only if the plaintiff's symptoms became more severe, the court found that the plaintiff failed to demonstrate how the delay in treatment could possibly have caused him harm.  Id.  Compare with Leavitt, 645 F.3d at 501 (plaintiff was deprived of medication needed to treat his HIV, which exacerbated his underlying HIV condition and left him statistically more likely to develop cancer in the future).  Here, there is no evidence in Plaintiff's medical records or elsewhere that the delay in treatment exacerbated his injury.  Like the plaintiff

---

[7] Again, Facey testified that he nonetheless sought medical treatment for Plaintiff, even though Plaintiff's injuries did not seem objectively serious.

[8] Again, the analysis for Eighth Amendment violations and Fourteenth Amendment violations is the same.  See Burrell, 307 F.3d at 7.

in Gaudrealt, Plaintiff was given a sling for his arm and a splint for his wrist. Plaintiff's treating physician did not recommend any follow-up treatment and, indeed, Plaintiff did not seek any. The delay in Plaintiff's treatment did not cause him any harm.

But even if this Court were to conclude that Plaintiff's injuries did amount to objectively "serious medical needs", there is no evidence that Facey was deliberately indifferent to them. As an initial matter, it is unclear whether Plaintiff is suing Facey in his individual capacity as a police officer or in his supervisory capacity. Either way, Plaintiff's claim fails.

To the extent Plaintiff is suing Facey in his individual capacity as a police officer, there is no evidence that Facey even interacted with Plaintiff at the police station. Facey never observed Plaintiff's injuries, never spoke to Plaintiff, and never witnessed Plaintiff's alleged "movements" or "emotional state". See FN 2; see also Exhibit 4. Again, Plaintiff concedes that he does not know whether he interacted with Facey at the station. Exhibit 1; 38:24; 39:1-5. In the absence of any evidence that Facey even interacted with Facey at the police station, Plaintiff cannot prove that Facey, in his individual capacity, was deliberately indifferent to his medical needs.

To the extent Plaintiff is asserting a claim against Facey in his supervisory capacity, it too fails as a matter of law. Supervisory liability under § 1983 is not vicarious liability. See Parker v. Landry, 935 F.3d 9, 15 (1st Cir. 2019). "Although a supervisor need not personally engage in the subordinate's misconduct in order to be held liable, his own acts or omissions must work a constitutional violation." Id. Put another way, "a supervisory may not be held liable for the constitutional violations committed by his or her subordinates, unless there is an affirmative link between the behavior of the subordinate and the action or inaction of the supervisor…such that the supervisor's conduct led inexorably to the constitutional violation." Feliciano-Hernandez v. Pereira-Castillo, 663 F.3d 527, 533 (1st Cir. 2011). "Facts showing no more than a supervisor's

mere negligence vis-à-vis his subordinate's misconduct are not enough to make out a claim of supervisory liability."  Id.  "At a minimum, the plaintiff must allege facts showing that the supervisor's conduct sank to the level of deliberate indifference."  Id.

Here, even assuming arguendo that there was a constitutional violation by one of Facey's subordinates in failing to request EMS for Plaintiff, there is no affirmative link between that constitutional violation and Facey's actions.  Facey knew only that Plaintiff had minor abrasions to his cheek and left arm, that Plaintiff was complaining of pain, and that there were no other visible injuries.  Though these injuries were not objectively serious, Facey nonetheless instructed that EMS be requested.  He was informed that EMS had already been requested and that Plaintiff refused to be evaluated.  To the extent that Facey was misinformed, and that EMS did not actually respond to the station to provide treatment to Plaintiff as he requested, or that Facey did not undertake efforts to double check that EMS responded to the station to provide treatment to Plaintiff as he requested, this does not amount to a "wanton infliction of pain" as required for a Fourteenth Amendment violation.  See Estelle, 429 U.S. at 105-106 (noting that an accident or mere negligence that produces pain and suffering cannot by itself be characterized as a wanton infliction of unnecessary pain).  Regardless of whether EMS actually responded to the scene and evaluated Plaintiff, which is disputed by Plaintiff for purposes of summary judgment, Facey's understanding of what transpired cannot be disputed.  It cannot be said that Facey possessed the requisite state of mind and was "deliberately indifferent" to Plaintiff's medical needs when Facey thought that 1) Plaintiff's medical needs were not objectively serious given that he had only minor abrasions to his cheek and arm and was generally complaining of pain; 2) that EMS had nonetheless been requested; and 3) that Plaintiff refused to be evaluated.  See Torraco v. Maloney, 923 F.2d 231, 234 (1st Cir. 1991) ("a state-of-mind issue such as the existence of

deliberate indifference usually presents a jury question.  However, where there is no evidence of treatment so inadequate as to shock the conscience, let alone that any deficiency was intentional, or evidence or acts or omissions so dangerous (in respect to health or safety) that the defendant's knowledge or a large risk can be inferred, summary judgment is appropriate").  Accordingly, any claim against Facey in his supervisory capacity fails as a matter of law.

### 1.   Facey Is Entitled To Qualified Immunity.

Even if a fact-finder were to conclude that Facey violated Plaintiff's Eighth or Fourteenth Amendment rights to medical treatment, Facey would be entitled to qualified immunity. "Qualified immunity inoculates government officials from civil liability based on their discretionary actions and decisions which, although injurious, 'do[] not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Conlogue, 906 F.3d at 154 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); see also Soto-Torres v. Fraticelli, 654 F.3d 153, 158 (1st Cir. 2011) (applying qualified immunity standard to Bivens actions).  "The doctrine's prophylactic sweep is broad."  Alfano v. Lynch, 847 F.3d 71, 75 (1st Cir. 2017).  "We view claims of qualified immunity through the lens of objective reasonableness.  So viewed, only those officials who should have known that their conduct was objectively unreasonable are beyond the shield of qualified immunity and, thus, are vulnerable to the sword of liability."  Id.  "The immunity afforded by this doctrine is particularly important for police officers in order not to 'unduly inhibit the assiduous discharge of their dut[y]' to protect the community at large."  Conlogue, 906 F.3d at 154 (citing Savard v. Rhode Island, 338 F.3d 23, 26 (1st Cir. 2003)).

Whether a constitutional right is "clearly established" is a matter of law for the court. See Siegert v. Gilley, 500 U.S. 226, 232 (1991).  The "contours of the right" must be "sufficient

clear," such that "under the specific facts of the case, a reasonable defendant would have understood that he was violating the right." Ford v. Bender 768 F.3d 15, 23 (1st Cir. 2014). While "general statements of the law are not inherently incapable of giving fair…warning," they do so only if their application to a specific set of facts is clear. United States v. Lanier, 520 U.S. 259, 271 (1997). Here, while it was clear at a general level that the constitution imposes a duty to attend to a prisoner's serious medical needs, it was not clear that medical treatment needed to be provided under the specific facts of this case. It is undisputed that the only visible injuries were minor abrasions to Plaintiff's cheek and arm. These unequivocally do not rise to the level of a serious medical need. We are left, then, with Plaintiff's fractured wrist. But this injury was not obvious in the sense that it would have alerted a reasonable person to a "serious" medical need, and there is no evidence that the delay in treatment exacerbated his injury or changed the course of his treatment. See Geaudreault, 923 F.2d at 208-209. There was no visible injury to Plaintiff's wrist. There were no bones protruding from his body. The only thing that alerted officers to this injury were Plaintiff's subjective declarations of pain. But subjective declarations of pain, without more, are not enough to signify a "serious medical need" in the constitutional sense.

But even if this Court were to conclude that Plaintiff's medical needs were "serious" in the constitutional sense, it was not clearly established that Facey's conduct under the circumstances was "deliberately indifferent" to them. As far as Facey knew, EMS had been requested and Plaintiff refused to be evaluated. There is no case law to suggest that Facey should have done something more under these circumstances. To the contrary, the case law is clear that this type of conduct—which amounts to negligence at most—is not enough to rise to

the level of a constitutional violation.  See Estelle, 429 U.S. at 105-106.  Accordingly, Facey is entitled to qualified immunity.

    C.  <u>Counts 3, 7, And 8 Must Be Dismissed Because Plaintiff Has Failed To Establish That Facey's Conduct Was Extreme And Outrageous.</u>

To establish a claim for intentional infliction of emotional distress ("IIED") under Massachusetts law, a plaintiff must prove four things:  1) that the defendant intended to inflict emotional distress or knew or should have know that emotional distress was the likely result of his conduct; 2) that the conduct was extreme and outrageous, <u>i.e.</u>, was beyond all possible bounds of decency and was utterly intolerable in a civilized society; 3) that the actions of the defendant were the cause of plaintiff's emotional distress; and 4) that the emotional distress sustained by the plaintiff was severe and of such a nature that no reasonable man could be expected to endure it.  See <u>Limone v. United States</u>, 579 F.3d 79, 94 (1st Cir. 2009).  Severe emotional distress means more than "mere emotional responses included anger, sadness, anxiety and distress, which, though blameworthy, are not legally compensable.  See <u>Kennedy v. Town of Billerica</u>, 617 F.3d 520, 530 (1st Cir. 2010).  Here, the undisputed facts do not support a claim for IIED.  Plaintiff's IIED claim fails for the same reason as his constitutional claims.  As described above, Plaintiff cannot demonstrate that Facey intended to inflict emotional distress given that Facey thought that EMS had been requested and that Plaintiff refused to be evaluated. To the extent that Facey was mistaken, and that EMS had actually not been requested despite his instruction, Facey's "conduct" would amount to negligence at most—which is not "beyond all possible bounds of decency" as required for an IIED claim.  See <u>Estelle</u>, 429 U.S. at 105-106. Because Plaintiff cannot establish that Facey possessed the requisite intent to cause him emotional distress, Plaintiff cannot prove an IIED claim.

D. <u>Count 9 Must Be Dismissed Because There Is No Cause Of Action Under The Massachusetts Declaration Of Rights And Any Claim Under The MCRA Fails As A Matter Of Law.</u>

The only remaining claim is Count 9, which purports to assert a claim under the Massachusetts Declaration of Rights. But there is no such cause of action. State constitutional claims must be brought pursuant to a statutory provision directly authorizing a private right of action. Massachusetts' refusal to recognize a private right of action under the Declaration of Rights "is soundly rooted in long-standing sovereign immunity law, which holds that the Commonwealth and its officers are generally immune from suits for damages for actions taken as State officers, unless the Legislature has acted expressly to abrogate that immunity." <u>Doe v. Sex Offender Registry Bd.</u>, 94 Mass. App. Ct. 52, 64–65 (2018); <u>see also</u> <u>Sullivan v. Chief Justice for Admin. & Mgmt. of Trial Court</u>, 448 Mass. 15, 31 (2006) ("the Commonwealth cannot be sued unless there has been a waiver of its sovereign immunity"). "No case, however, has yet recognized a claim for money damages, brought directly under the State Constitution against State officers for actions taken as State officers." <u>Doe</u>, 94 Mass. App. Ct. at 64 (rejecting complaint that "purports to assert its State constitutional claims directly under the Massachusetts Declaration of Rights, without reference to any statutory cause of action"). As the Appeals Court has held, §1983 and its state analogue, the MCRA, "may be thought, as it were, to occupy the field." <u>Martino v. Hogan</u>, 37 Mass. App. Ct. 710, 720 (1994). Courts should not "abrogate sovereign immunity by fashioning a judicial remedy where the Legislature did not." <u>See Doe</u>, 94 Mass. App. Ct. at 65. As there is no private right of action under the Declaration of Rights, Count 9 must be dismissed.

The claim cannot be repleaded as an MCRA claim against Facey. To prevail on a claim under the MCRA, "a plaintiff must show that 1) his exercise or enjoyment of rights secured by

the constitution or laws of either the United States or the Commonwealth of Massachusetts 2) has been interfered with, or attempted to be interfered with, and 3) that the interference or attempted interference was by threats, intimidation, or coercion." Farrah ex rel. Estate of Santana v. Gondella, 725 F. Supp. 2d 238, 247 (D. Mass. 2010).  As defined by the Supreme Judicial Court, "[a] threat…involves the intentional exertion of pressure to make another fearful or apprehensive of injury or harm.  Intimidation involves putting in fear for the purpose of compelling or deterring conduct.  Coercion involves the application to another of such force, either physical or moral, as to constrain [a person] to do against his will something he would not have otherwise done." Id. (citing Planned Parenthood League of Mass., Inc. v. Blake, 417 Mass. 467, 474 (1994)).  A direction violation of a person's rights does not by itself involve threats, intimidation, or coercion.  Farrah, 725 F. Supp. 2d at 248.

Here, Plaintiff has alleged, at most, a direct violation of his rights—that the alleged delay in medical treatment violated his Eighth and Fourteenth Amendment rights.  But Plaintiff has not proven that this alleged deprivation of his rights was accomplished by means of threats, intimidation, or coercion.  Accordingly, Facey is entitled to summary judgment as to Plaintiff's MCRA claim.

## VI.    CONCLUSION

WHEREFORE, for the reasons set forth above, Defendant Facey submits that he is entitled to summary judgment for all claims set forth in Plaintiff's Second Amended Complaint.

Respectfully submitted,

**DEFENDANT, LEIGHTON FACEY**

By his attorneys:

Henry C. Luthin
Corporation Counsel


*/s/ Nicole M. O'Connor*
Nicole M. O'Connor (BBO#675535)
Senior Assistant Corporation Counsel
City of Boston Law Department
City Hall, Room 615
Boston, MA 02201
(617) 635-4039
Nicole.OConnor@boston.gov


## CERTIFICATE OF SERVICE

I, Nicole M. O'Connor, hereby certify that a true copy of the above document was served upon all registered participants via this court's electronic filing system and upon all those non-registered participants by mailing a copy of same via first class mail to the address listed below on March 19, 2021:

Shawn T. McClinton
Suffolk County South Bay House of Corrections
20 Bradston Street
Boston, MA 02118

*/s/ Nicole M. O'Connor*
Nicole M. O'Connor


## CERTIFICATE OF COMPLIANCE WITH L.R. 7.1

I, Nicole M. O'Connor, hereby certify that I was unable to confer with Plaintiff regarding the contents of this motion due to his incarceration.

Dated:  March 19, 2021

*/s/ Nicole M. O'Connor*
Nicole M. O'Connor

16