UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SHAWN T. MCCLINTON, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil No. 19-11235-LTS |
| LEIGHTON FACEY, | ) ) ) | |
| Defendant. | ) ) | |

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT (DOC. NOS. 82, 86)

September 22, 2021

SOROKIN, J.

      Pro se Plaintiff Shawn T. McClinton sued Defendant Lieutenant Leighton Facey for alleged constitutional and state law violations when he was in police custody on October 5, 2017. Doc. No. 77. Each party now moves for summary judgment, and the motions are fully briefed. Doc. Nos. 82, 86. The Court has carefully reviewed the parties' submissions and arguments and applied the familiar summary judgment standard, drawing all reasonable inferences and resolving disputes of genuine material fact in favor of the non-moving party. For the reasons that follow, the Court ALLOWS Facey's cross-motion for summary judgment, Doc. No. 86, and DENIES McClinton's motion for summary judgment. Doc. No. 82.

I.   BACKGROUND[1]

On October 5, 2017 at 2:30 PM, McClinton was arrested by two Boston police officers. Doc. No. 87-2 at 1; Doc. No. 77 at 3. McClinton alleges that he was injured during the arrest but asserts that what happened then is not relevant to his claims here. Doc. No. 87-1 at 12. At 3:26 PM, Officer Michael Kerin booked McClinton at the Boston Police Department Area B2 ("B2"). Doc. No. 87-2 at 1. At the time, McClinton had visible lacerations on his cheek and arm and complained of pain in his right shoulder. Id. McClinton described his physical and emotional pain to Kerin as well as "[e]very officer [he] came in contact with . . . [d]uring the booking process." Doc. No. 87-1 at 13. He also made multiple requests to receive medical attention. Doc. No. 77 at 3.

Facey, as the duty supervisor, was not involved with McClinton's booking process, Doc. No. 87-4 ¶¶ 4-5, but he was on duty when McClinton was being booked since his shift started at 3:00 PM. Doc. No. 87 at 3; Doc. No. 87-1 at 13. Thereafter, a patrol officer informed Facey that McClinton had "minor abrasions to his cheek and arm" and was complaining about his pain, so Facey instructed that EMS be requested and "was informed that EMS had been requested." Doc. 87-4 ¶ 7. EMS received a request to dispatch around 2:10 PM. Doc. No. 87-5 at 1. Two EMS units responded, one dispatching around 2:47 PM and another around 2:53 PM. Id. at 2. EMS was at B2 from approximately 2:52 PM to 3:58 PM. Id. EMS assistance, however, was not ultimately rendered to McClinton.[2] Doc. No. 87-3. At 5:47 PM, Facey completed a Visible

---

[1] Unless specifically noted, these facts are undisputed. "Where material disputes remain, they are highlighted in the court's legal analysis and viewed in the light most favorable to the non-moving party." Davis v. Murphy, No. 13-CV-11900-IT, 2018 WL 1524532, at *1 (D. Mass. Mar. 28, 2018).
[2] Both parties agree that EMS assistance was not rendered but dispute why. Facey claims that McClinton "refused to be evaluated by EMS." Doc. No. 87 at 4. McClinton disagrees, arguing that he did not refuse EMS assistance. Doc. No. 90 at 17.

2

Injury Report which described that McClinton had a "[m]inor abrasion on cheek and left arm" and "[c]omplained of shoulder pain."  Id.  At some point, McClinton made a sling out of his shirt for his arm, Doc. No. 87-6 at 1, and eventually passed out from the pain, later spending the night at B2.  Doc. No. 77 at 3.

The next morning on October 6, 2017, McClinton posted bail and immediately went to Massachusetts General Hospital, id. at 3-4, where his chief complaint was shoulder pain.  Doc. No. 87-6 at 4.  Upon examination, McClinton's treating physician diagnosed that his right wrist had a minimally displaced radial styloid fracture, but his right shoulder had no acute fracture or dislocation.  Id. at 1.  Accordingly, his physician placed his "right wrist in [a] splint [and provided] a shoulder sling for comfort."  Id.  After this treatment, McClinton has not received any other follow up treatment for his injuries aside from pain medication.  Doc. No. 87-1 at 19.

Both parties have no recollection of personally interacting with each other while McClinton was in police custody on October 5-6, 2017, i.e., neither party provides evidence that they interacted with each other.  Doc. No. 87 at 3; Doc. No. 87-1 at 16.  Indeed, the Boston Police Department has a form titled "Visible Injury Report" which states that it is "[t]o be completed by Shift Commander/Duty Supervisor."  Doc. No. 87-3.  Facey is listed as the "Shift Commander" on the Visible Injury Report for McClinton, id., and based on this, the Court draws the reasonable interpretation that Facey completed the report.  Because the report describes his injuries, McClinton infers that Facey's completion of the report means that they must have interacted with each other.  Doc. No. 90 at 16.  This inference, however, has no basis.  McClinton does not specifically state that he interacted with Facey; in fact, he describes having no recollection of interacting with Facey.  Doc. No. 87-1 at 16.  Moreover, the Visible Injury Report contains information that necessarily came from other officers, such as the description of

the arrest during which Facey was not present. Doc. No. 87-3; Doc. No. 87-4 at 1. All the Visible Injury Report establishes is the responsibility of the Duty Supervisor to gather information about visible injuries and report them. Accordingly, there is no basis for McClinton's inference that Facey interacted with him.

The parties have filed cross motions for summary judgment. Doc. Nos. 82, 86. McClinton moves for summary judgment on all claims[3] against Facey, alleging constitutional and state law violations stemming from the denial of medical care for his injuries. Doc. No. 82. Facey opposes McClinton's motion and cross-moves for summary judgment on all claims, arguing that he was not deliberately indifferent to McClinton's injuries. Doc. No. 86. The motions are fully briefed.

II. LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once a party "has properly supported its motion for summary judgment, the burden shifts to the non-moving party, who 'may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial.'" Barbour v. Dynamics Research Corp., 63 F.3d 32, 37 (1st Cir. 1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). The Court is "obliged to [] view the record in the light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor." LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993). Even so, the

---

[3] McClinton brings the following claims: negligence, gross negligence, negligent infliction of emotional distress, intentional infliction of emotional distress, intent to cause emotional distress, extreme and outrageous conduct, Massachusetts Declaration of Rights, Fourteenth Amendment, and Eighth Amendment. Doc. No. 77.

Court is to ignore "conclusory allegations, improbable inferences, and unsupported speculation." Prescott v. Higgins, 538 F.3d 32, 39 (1st Cir. 2008) (quoting Medina–Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)). A court may enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

III. DISCUSSION

The Court first considers Facey's motion for summary judgment as to McClinton's constitutional claims under the Eighth and Fourteenth Amendments. Then, the Court turns to Facey's motion as to the remaining claims. Finally, the Court turns to McClinton's motion for summary judgment.

A. Facey's Motion: Eighth Amendment

Facey moves for summary judgment on Count VI of McClinton's Amended Complaint, which alleges that Facey "inflict[ed] cruel and unusual punishment . . . by denying the plaintiff the necessary medical attention" while in police custody, thus violating the Eighth Amendment. Doc. No. 77 ¶¶ 27-33.

The Eighth Amendment's protections do not apply to individuals who have not been convicted. Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979). Because McClinton was a pre-trial detainee who had not been convicted at the time of the alleged misconduct, Doc. No. 77, the Eighth Amendment does not apply here. Accordingly, Facey's motion for summary judgment as to Count VI of the Amended Complaint is ALLOWED.

B. Facey's Motion: Fourteenth Amendment

Facey also moves for summary judgment on Count V of McClinton's Amended Complaint. Although the Eighth Amendment itself does not apply to pre-trial detainees, the Supreme Court has applied its protections through the substantive due process protections of the Fourteenth Amendment. Bell, 441 U.S. at 535 n.16.

1. *Individual Capacity*[4]

Police officers violate the Fourteenth Amendment's prohibition against "cruel and unusual" punishments when they exhibit "deliberate indifference to [a detainee's] serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). To succeed on a claim of deliberate indifference based on inadequate or delayed medical care, "a plaintiff must satisfy both a subjective and objective inquiry." Perry v. Roy, 482 F.3d 73, 78 (1st Cir. 2015) (citing Leavitt v. Corr. Med. Servs., 645 F.3d 484, 497 (1st Cir. 2011)). Objectively, he must establish that the deprivation was "sufficiently serious." Id.; see also Kosilek v. Spencer, 774 F.3d 63, 82 (1st Cir. 2014) (en banc). Subjectively, a plaintiff must show "that prison officials possessed a sufficiently culpable state of mind, namely one of 'deliberate indifference' to an inmate's health or safety." Leavitt, 645 F.3d at 497 (quoting Burrell v. Hampshire Cnty., 307 F.3d 1, 8 (1st Cir. 2002)).

As to the objective prong, a serious medical need "is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Miranda-Rivera v. Toledo-Davila, 813 F.3d 64,

---

[4] The Amended Complaint does not specify whether McClinton is suing Facey in his individual or supervisory capacity, or both. Doc. No. 77 ¶¶ 25-29. The Court liberally construes McClinton's Fourteenth Amendment claim because of his pro se status and evaluates the claim under both theories of liability.

6

74 (1st Cir. 2016) (quoting Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990)). Even a significant risk of future harm may suffice. Kosilek, 774 F.3d at 85 (citing Helling v. McKinney, 509 U.S. 25, 35 (1993)). The "'seriousness' of an inmate's needs may also be determined by reference to the effect of the delay of treatment." Gaudreault, 923 F.2d at 208.

The subjective prong turns on whether Facey was "deliberately indifferent" to McClinton's injuries. Deliberate indifference requires (1) that "the official ... be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and (2) that he draw that inference. Miranda-Rivera, 813 F.3d at 74 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). Importantly, "there is no deliberate indifference if an official responds reasonably to the risk." Id. "Moreover, inadvertent failures to provide medical care, even if negligent, do not sink to the level of deliberate indifference. In order to establish deliberate indifference, the complainant must prove that the defendants had a culpable state of mind and intended wantonly to inflict pain." Braga v. Hodgson, 605 F.3d 58, 61 (1st Cir. 2010) (citing DesRosiers v. Moran, 949 F.2d 15, 19 (1st Cir. 1991)).

The Court assumes, without deciding, that McClinton's injuries objectively constitute a "serious medical need."[5] Subjectively, however, this claim fails because even under the

---

[5] McClinton may well not have suffered injuries qualifying as a "serious medical need" under the Fourteenth Amendment. Although McClinton's lacerations on his cheek and arm were obvious in the sense that they were visible, lacerations on their own are typically insufficient to constitute serious medical needs. See Gaudreault, 923 F.2d at 208-09. Indeed, McClinton also had a wrist fracture and shoulder pain, but his physician prescribed arguably minimal treatment through a wrist splint, shoulder sling, and pain medication with no subsequent surgeries or follow up treatment. Doc. No. 87-6 at 1. These facts are similar to Gaudreault, where even a "'blow out fracture' of the right orbit" was not enough to qualify as a "serious medical need." 923 F.2d at 209. Nonetheless, the Court assumes for this motion that the injuries constitute a serious medical need.

7

plaintiff-friendly summary judgment standard, McClinton and Facey did not personally interact with each other. Doc. No. 87 at 3; Doc. No. 87-1 at 16. Even if they did interact, McClinton has not met his burden to establish the level of deliberate indifference required. The summary judgment evidence viewed most favorably to McClinton shows that Facey learned of McClinton's injuries, instructed an officer to request EMS and learned that had already been done. Doc. No. 87-4 ¶ 7. The undisputed evidence further establishes that EMS did respond to B2 from 2:52 PM to 3:58 PM, overlapping with the time McClinton was being booked at 3:26 PM. Doc. No. 87-5; Doc. No. 87-2. Far from intending to "wantonly . . . inflict pain," Facey was under the impression that EMS had been called to examine McClinton's injuries. Moreover, even if McClinton is correct that medical services were not offered to him,[6] nothing in the record indicates that Facey had a "culpable state of mind" in his individual capacity.[7]

2. *Supervisory Liability*

To make a claim for supervisory liability, the plaintiff must plausibly allege both that "'one of the supervisor's subordinates abridged the plaintiff's constitutional rights' and then forge an affirmative link between the abridgement and some action or inaction on the

---

[6] McClinton argues that EMS examined other prisoners but not him. Doc. No. 90 at 17. The record shows that EMS was requested at 2:10 PM, prior to McClinton's arrest at 2:30 PM, which may bolster McClinton's argument that EMS was called for other individuals. Doc. No. 87-5 at 1; Doc. No. 87-2 at 1. This, however, does not prove whether EMS offered its services to McClinton or why services were not ultimately rendered.

[7] Notably, the record does not show that McClinton complained specifically about wrist pain; rather, the evidence suggests that he complained primarily about his shoulder and pain more generally. Doc. No. 87-3; Doc. No. 87-2 at 1. In fact, McClinton's chief complaint at the Massachusetts General Hospital the day after his arrest was shoulder, not wrist, pain. Doc. No. 87-6 at 4. If Facey was unaware about the wrist pain and a possible fracture there, he could not have been deliberately indifferent to it. See Washington v. Gagliani, No. CV 11-10771-PBS, 2019 WL 4277347, at *2 (D. Mass. Sept. 9, 2019) (describing that the plaintiff did not complain about his possible hand fracture to the nurse, so there was "no evidence that shows that [the nurse] was deliberately indifferent to any possible fracture.").

supervisor's part." Parker v. Landry, 935 F.3d 9, 14 (1st Cir. 2019) (quoting Guadalupe-Baez v. Pesquera, 819 F.3d 509, 515 (1st Cir. 2016)). "Although a supervisor need not personally engage in the subordinate's misconduct in order to be held liable, his own acts or omissions must work a constitutional violation." Id. (citing Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009)). Importantly, a supervisor's negligence as to the subordinate's conduct is insufficient. Id.

Viewing the facts in favor of McClinton, the record is insufficient to show that Facey was deliberately indifferent to a serious medical need under a theory of supervisory liability. Even if one of Facey's subordinates infringed on McClinton's constitutional rights by not having EMS offer its services, the record does not show an "affirmative link" between the infringement and Facey's actions as a supervisor. Without an affirmative link, Facey is not liable in his supervisory capacity. Even if Facey was negligent in failing to follow up with his subordinates to check if EMS assistance was in fact offered, the First Circuit has been clear that negligence is insufficient to make out a claim of supervisory liability. Id. Accordingly, Facey's motion for summary judgment as to Count V of the Amended Complaint is ALLOWED.

### C. Facey's Motion: All Other Claims

1. *Counts I, II, IV (Negligence, Gross Negligence, Negligent Infliction of Emotional Distress)*

The Massachusetts Tort Claims Act provides that no "public employee . . . shall be liable for any injury or loss of property or personal injury . . . caused by his negligent or wrongful act or omission while acting within the scope of his office or employment." Mass. Gen. Laws ch. 258 § 2 (2009). Given that Facey is a public employee with the Boston Police Department and acted within the scope of his employment during the alleged misconduct at issue, he is immune from negligence claims. See Canales v. Gatzunis, 979 F. Supp. 2d 164, 174 (D. Mass. 2013).

9

Accordingly, Facey's motion for summary judgment as to Counts I, II, and IV of the Amended Complaint are ALLOWED.

    2. *Counts III, VII, VIII (Intentional Infliction of Emotional Distress, Intent to Cause Emotional Distress, Extreme and Outrageous Conduct)*

To make a claim for intentional infliction of emotional distress ("IIED"), plaintiffs are required to show "(1) that [the defendant] intended, knew, or should have known that his conduct would cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the conduct caused emotional distress; and (4) that the emotional distress was severe." Galvin v. U.S. Bank, N.A., 852 F.3d 146, 161 (1st Cir. 2017) (quoting Polay v. McMahon, 468 Mass. 379, 385 (2014)). The "standard for making a claim of [IIED] is very high." Doyle v. Hasbro, Inc., 103 F.3d 186, 195 (1st Cir. 1996). Specifically, conduct is extreme and outrageous only if it "go[e]s beyond all possible bounds of decency, and [is] regarded as atrocious, and utterly intolerable in a civilized community." Id.

McClinton argues that denying medical attention to someone with a fracture and in pain is sufficiently extreme and outrageous conduct. Doc. No. 90 at 21. No reasonable fact finder, however, could conclude that Facey's conduct was extreme and outrageous given that he instructed an officer to request EMS and was told that this had already been done. Unless there was something more, and there is not, the evidence fails to sufficiently show extreme and outrageous conduct. Doc. No. 87-4 ¶ 7. Accordingly, Facey's motion for summary judgment as to Counts III, VII, VIII of the Amended Complaint are ALLOWED.

    3. *Count IX (Massachusetts Declaration of Rights)*

Due to long-standing sovereign immunity law, "[n]o case . . . has yet recognized a claim for money damages, brought directly under the State Constitution against State officers for

10

actions taken as State officers." Doe v. Sex Offender Registry Bd., 112 N.E.3d 276, 286 (Mass. App. Ct. 2018). The Massachusetts Declaration of Rights "does not provide a private right of action." Ward v. Schaefer, No. CV 16-12543-FDS, 2021 WL 1178291, at *27 (D. Mass. Mar. 29, 2021). The Massachusetts Legislature has not acted to expressly abrogate its immunity, except under the Massachusetts Civil Rights Act ("MCRA"). Doe, 112 N.E.3d at 286. To establish a claim under the MCRA, a "plaintiff must prove that (1) the exercise or enjoyment of some constitutional or statutory right; (2) has been interfered with, or attempted to be interfered with; and (3) such interference was by threats, intimidation, or coercion." Glovsky v. Roche Bros. Supermarkets, 17 N.E.3d 1026, 1034-35 (2014).

Although McClinton brings a claim under the Massachusetts Declaration of Rights and does not reference the MCRA, Doc. No. 77 ¶¶ 46-50, the Court liberally construes the allegation due to his pro se status and considers whether he has set forth a sufficient claim under the MCRA. He has not. McClinton has made no colorable argument that Facey interfered with his constitutional rights through the use of threats, intimidation, or coercion. Accordingly, Facey's motion for summary judgment as to Count IX of the Amended Complaint is ALLOWED.

D. McClinton's Motion

Applying the plaintiff-friendly standard to Facey's motion above, the Court determined that summary judgment is entered in favor of Facey. In light of that order, McClinton cannot prevail on his motion under the defendant-friendly standard that would govern his motion. Accordingly, McClinton's motion for summary judgment is DENIED.

11

IV.     CONCLUSION

For the foregoing reasons, the Court DENIES McClinton's motion for summary judgment, Doc. No. 82, and ALLOWS Facey's cross-motion for summary judgment, Doc. No. 86. A separate and final judgment will enter, and the Clerk shall close this case.

SO ORDERED.

 /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge